IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SELECTIVE INSURANCE COMPANY OF AMERICA, | : : : | |
| Plaintiff, | : : | |
| v. | : : | CIVIL ACTION |
| BOY SCOUTS OF AMERICA, | : : : | NO. 15-0299 |
| and | : : | |
| BOY SCOUTS OF AMERICA, NORTHEASTERN PENNSYLVANIA COUNCIL, | : : : : : | |
| Defendants/Third-Party Plaintiffs, | : : | |
| v. | : : | |
| UNITED EDUCATORS INSURANCE, | : : | |
| and | : : | |
| KEYSTONE COLLEGE, | : : | |
| Third-Party Defendants. | : | |

## **MEMORANDUM**

Tucker, J.                                                                                                  April__2___, 2018

Before the Court are the following:

1. Defendants Boy Scouts of America and Boy Scouts of America, Northeastern Pennsylvania Council's Motion for Summary Judgment (Doc. 63);

2. Plaintiff's Opposition thereto (Doc. 69);

3. Plaintiff's Selective Insurance Company of America's Cross-Motion for Summary Judgment (Doc. 65); and

1

4. Defendants' Opposition thereto (Doc. 68).

Upon consideration of the Parties' submissions, Plaintiff's Motion is GRANTED and Defendants' Motion is DENIED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendants Boy Scouts of America ("BSA") and Boy Scouts of America, Northeastern Pennsylvania Council ("NEPC") (collectively, "Defendants") are operators of the Goose Pond Reservation ("Goose Pond") camping ground in Lake Arial, Pennsylvania. (Defs.' Statement of Undisputed Facts 3, ECF No. 63-2.) On August 23, 2012, Robert Hallum, a student at Keystone College, was injured while participating in orientation activities, which the College conducted at Goose Pond. (Compl. 3, ECF No. 1.) Hallum instituted a lawsuit in the Pennsylvania Court of Common Pleas based on his injuries, naming BSA, NEPC, and Keystone College, among others, as defendants.

At the time of the accident, Keystone was covered under a policy of liability insurance—Policy No. S1945394 ("Policy")—which Plaintiff Selective Insurance Company of America issued. (Pl.'s Mem. Law Supp. Cross-Mot. Summ. J. Ex. D, at 2, ECF No. 65-6.) Prior to Hallum's accident, NEPC sent Keystone a letter, referred to by the Parties as the "Goose Pond Reservation Confirmation" or the "GPRC," which states in pertinent part:

> Please allow this letter to serve as our formal agreement for your agency, Keystone College, to utilize our council camp facilities and COPE course at Goose Pond Scout Reservation, Paupack Township, Pennsylvania during the weekend of Thursday, August 23, 2012 through Saturday, August 25, 2012. Our agreement is confirmed as follows:
>
> \*   \*   \*
>
> 5. A current copy of your organizational insurance liability certificate in the amount of at least $2,000,000.00, specifically naming the Northeastern Pennsylvania Council,

> Boy Scouts of America as additionally insured should be forwarded with fee payments.

(Pl.'s Mem. Law Supp. Cross-Mot. Summ. J., Ex. B., at 2, ECF No. 65-4.) Keystone did not forward a copy of its "organizational insurance liability certificate" to NEPC as the GPRC required. (Pl.'s Mem. Law Supp. Cross-Mot. Summ. J. 3, ECF No. 75-4.) Keystone also failed to request that Plaintiff name either BSA or NEPC as additional insureds under the Policy. Thus, Plaintiff did not name NEPC or BSA as additional insureds under the Policy.

The Policy's Blanket Additional Insureds clause provides a means by which a third-party with whom Keystone contracted may be considered an additional insured in spite of not having been named as such. The Policy defines "insured" to include:

> [A]ny person or organization with whom you have agreed in a written contract, written agreement or written permit that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury" "property damage" caused, in whole or in part, by:
>
> 1. Your ongoing operations performed for that person or organization, "your product," or premises owned or used by you . . . .
>
> \* \* \*
>
> The provisions of this coverage Extension do not apply unless the written contract or written agreement has been executed (executed means signed by the named insured and additional insured) or written permit issued prior to the "bodily injury" or "property damage."

(Pl.'s Mem. Law Supp. Cross-Mot. Summ. J. Ex. D, at 29–30, ECF No. 65-6.)

On January 22, 2015, Plaintiff commenced this action seeking a declaration from this Court that Defendants are not entitled to coverage as additional insureds under the Policy.

3

(Compl., ECF No. 1.) On July 28, 2017, both Parties filed motions for summary judgment. (Defs.' Mot. Summ. J., ECF No. 63; Pl.'s Cross-Mot. Summ. J., ECF No. 65.)

**II.    STANDARD OF REVIEW**

In order to grant relief under the Declaratory Judgment Act, the case must be ripe for judicial review. *Armstrong World Industries, Inc. v. Adams*, 961 F.2d 405, 411 (3d Cir. 1992). For a matter to be justiciable, it must present a "case of actual controversy." 28 U.S.C. § 2201 (West 2016). The Third Circuit has held that a disagreement regarding an insurer's obligation to defend constitutes a case or controversy. *ACandS, Inc. v. Aetna Cas. and Sur. Co.*, 666 F.2d 819, 822–3 (3d Cir. 1981); *Globe Indemnity Co. v. St. Paul Fire & Marine Ins. Co.*, 369 F.2d 102, 105 (3d Cir. 1966). Thus, this case is ripe for judicial review.

Under Rule 56 of the Federal Rules of Civil Procedure, a court shall grant summary judgment in favor of the moving party only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is "one that might 'affect the outcome of the suit under governing law.'" *Smith v. Johnson & Johnson*, 593 F.3d 280, 284 (3d Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute as to a material fact is "genuine" if it "is one that 'may reasonably be resolved in favor of either party.'" *Lomando v. United States*, 667 F.3d 363, 371 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 250). The movant has the initial "burden of identifying specific portions of the record that establish the absence of a genuine issue of material fact." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015). When assessing a motion for summary judgment, the court "must construe all evidence in the light most favorable to the nonmoving party." *Id.* (citation omitted).

The standard of review for cross-motions for summary judgment is identical to the standard applicable to routine motions for summary judgment. *Lawrence v. City of Phila.*, 527

F.3d 299, 310 (3d Cir. 2008). "When confronted with cross-motions for summary judgment . . . 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard.'" *Van Arsdel v. Liberty Life Assurance Co. of Bos.*, 267 F. Supp. 3d 538, 545 (E.D. Pa. 2017) (citing *Erbe v. Conn. Gen. Life Ins. Co.*, Civ. A. No.06-113, 2009 WL 605836, at *1 (W.D. Pa. Mar. 9, 2009)).

## III.  DISCUSSION

The sole question before the Court is whether Defendants were additional insureds under the Policy. After careful review of the Parties' submissions, the Court finds that Defendants were not additional insureds under the Policy because: 1) neither BSA nor NEPC was named as additional insureds under the Policy; and 2) the Policy's Blanket Additional Insureds clause is inapplicable because Keystone's agreement with NEPC was not executed as the Blanket Additional Insureds clause required.

### A.  Defendants Were Not Named As Additional Insureds.

It is undisputed that Keystone failed to request that Plaintiff name Defendants as additional insureds under the Policy. (Defs.' Br. Opp. Pl.'s Mot. Summ. J. 3, ECF No. 68.) Under the GPRC, Keystone was required to provide Defendants with a copy of Keystone's organizational insurance liability certificate specifically naming NEPC as an additional insured. (Defs.' Statement of Undisputed Facts in Supp. of Mot. Summ. J. 4, ECF No. 63-2.) Defendants admit that "[d]espite the Confirmation's terms, Keystone never notified Selective of the Confirmation or affirmatively requested that Defendants be added as additional insure[ds] under the Policy." (Defs.' Statement of Undisputed Facts in Supp. of Mot. Summ. J. ¶ 15, ECF No. 63-2.) Accordingly, Plaintiff never listed Defendants as additional insureds under the Policy. Thus,

5

Defendants could only obtain additional insured coverage via the Policy's Blanket Additional Insured clause.

### B. Defendants Are Not Additional Insureds Under The Policy's Blanket Additional Insureds Clause.

Defendants are not covered as insureds under the Policy's Blanket Additional Insureds clause because the GPRC was not signed by Keystone as the clause required. In Pennsylvania, "the interpretation of an insurance contract is a question of law." *Gen. Refractories Co. v. First State Ins. Co*, 855 F.3d 152, 158 (3d Cir. 2017). In interpreting a contract, a court must "ascertain the intent of the parties as manifested by the language of the written instrument." *Id.* (quoting *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999). "The language of the contract must be the 'polestar' of our inquiry." *Id.* (quoting *Madison Contr. Co.*, 735 A.2d at 106). When the language of the contract is clear and unambiguous, a court must give effect to that language. *Id.* On the other hand, "when the language is ambiguous, the provision should be construed in favor of the insured and against the insurer." *Id.* (citation omitted). "Ambiguity exists where the language of the contract is 'reasonably susceptible of different constructions and capable of being understood in more than one sense.'" *Id.* (citation omitted).

The Blanket Additional Insureds clause provides that the written agreement obligating Keystone to name NEPC as an additional insured must be signed by both Keystone and NEPC. This provision of the contract is unambiguous as it is not reasonably susceptible to different constructions or capable of being understood in more than one sense. *See id.* Therefore, the Court is required to give effect to this language. Accordingly, the Court finds that automatic insured coverage was not triggered under the contract because Keystone did not sign the GPRC.

In *Nationwide Mut. Ins. Co. v. Architectural Glazing Sys., Inc.*, the Eleventh Circuit Court of Appeals enforced a similar automatic additional insured provision. 661 F. App'x 611,

6

616 (11th Cir. 2016). In that case, the provision provided that the insured "could add 'additional insured[s]' to the policy by 'agree[ing] in a written contract, written agreement, or written permit to add [the entity] as an additional insured on [the] policy.'" *Id.* at 616 (alterations in original). The policy further provided that "'[t]he provisions of this coverage extension do not apply unless the written contract or written agreement has been executed.'" *Id.* (alteration in original). The policy defined "executed" to mean "signed by the named insured." *Id.* The Eleventh Circuit found that additional insured coverage was not triggered because the named insured did not sign the written agreement; the agreement was signed by a different party. *Id.* In the present case, the Policy required the signature of both parties to the agreement. Because it is undisputed that Keystone—the named insured—never signed the GPRC, Defendants were not additional insureds under the Policy.

Defendants argue that, although Keystone did not sign the GPRC, the GPRC should be binding on Plaintiff because "Keystone ratified its existence through its actions, and later, the pleadings, motions, and testimony in the Hallum Litigation." (Defs.' Br. Opp. Pl.'s Mot. Summ. J. 6, ECF No. 68.) Defendants' argument is unfounded. While Keystone may have ratified the GPRC, Plaintiff was not a party to the GPRC. Thus, Keystone's alleged ratification of the GPRC has no bearing on whether Defendants were covered under the Policy, which Plaintiff issued. The primary question is not whether a contract existed between Keystone and NEPC. Instead, the Court must determine whether all conditions precedent were satisfied to trigger automatic additional insured coverage under the Policy. The record demonstrates that one condition precedent—the execution of a written agreement by both parties to the agreement—was not satisfied. The Blanket Additional Insured provision states that "[t]he provisions of this coverage Extension do not apply unless the written contract or written agreement has been executed

7

(executed means signed by the named insured and additional insured) or written permit issued prior to the 'bodily injury' or 'property damage.'" (Defs.' Mem. Law Supp. Mot. Summ. J. 6, ECF No. 63-3.) Thus, Keystone and NEPC's execution of the GPRC was a condition precedent to Plaintiff providing additional insured coverage to Defendants. Because the GPRC was not executed as defined by the Policy, the Blanket Additional Insured clause was not triggered.

Defendants argue that the Blanket Additional Insured clause's signature requirement is inapplicable because "the testimony of Keystone's representatives is uncontroverted, an express agreement between Keystone and Defendants was, in fact, reached." (Defs.' Mem. L. Supp. Mot. Summ. J. 8, ECF No. 63-3.) Defendants' argument is unpersuasive. Whether Keystone believed that it had an express agreement with Defendants is of no consequence to the issue of whether automatic additional insured coverage was triggered under the Policy. The Policy is the polestar for determining whether automatic additional insured coverage was triggered. *See Gen. Refractories Co.*, 855 F.3d at 158 (stating that the language of the contract must be the polestar of a court's inquiry). The Policy indicates that before such coverage is triggered, there must be a written agreement signed by both parties to the agreement. Plaintiff never indicated, through words or conduct, that it was willing to waive the Policy's signature requirement. Because Keystone did not sign the GPRC, the Policy's signature requirement was not satisfied and automatic additional insured coverage was not triggered.

Finally, Defendants argue that the GPRC is a written permit within the meaning of the Blanket Additional Insured clause; therefore, Keystone's signature was not required to trigger automatic additional insured coverage under the Policy. The Policy did not require a permit to be executed by the parties. The Policy only required that the permit be issued prior to the bodily injury or property damage. (Pl.'s Mem. Law Supp. Cross-Mot. Summ. J. Ex. D, at 24–30, ECF

8

No. 65-6.) Thus, if the GPRC is found to be a written permit, NEPC would be an additional insured under the Policy. In the alternative, Defendants maintain that the term "permit," which is not defined by the Policy, is ambiguous and should be construed against Plaintiff, the drafter of the Policy. (Defs.' Br. Opp. Pl.'s Mot. Summ. J. 10, ECF No. 68.)

The term "permit," as used in the Policy, is not ambiguous and Defendants have conceded that the GPRC is an agreement, as opposed to a written permit. A contract is ambiguous "if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning." *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 93, (3d Cir. 2001). The "words of the insurance policy must be construed in their natural, plain and ordinary sense." *Riccio v. Am. Republic Ins. Co.*, 705 A.2d 422, 426 (Pa. 1997). The Court finds that the term "permit" is not ambiguous because the term cannot reasonably be understood in more than one sense. This lack of ambiguity is demonstrated by the fact that both Parties agree that "permit" should be defined using the definition provided in *Black's Law Dictionary*.[1] (Defs.' Mem. Law Supp. Mot. Summ. J. 12, ECF No. 63-3; Pl.'s Mem. Law Supp. Cross-Mot. Summ. J. 18, ECF No. 65-2.) However, the Parties disagree as to whether the GPRC falls within that definition. According to Black's Law Dictionary, a "permit" is a "certificate evidencing permission; an official written statement that someone has the right to do something; license." *Black*'s *Law Dictionary* (Bryan A. Garner ed., 10th ed. 2014). The Court need not determine whether the GPRC is a permit within the meaning of the Policy because Defendant NEPC—the drafter of the GPRC —refers to the GPRC as an agreement. The first line

---

[1] Defendants also suggest the following definitions: "to consent to expressly or formally;" "to make possible;" and "to give an opportunity, allow." However, each of these definitions define "permit" in its verb form. These definitions are not appropriate because the Policy uses the term "permit" in its noun form.

of the GPRC reads, "[p]lease allow this letter to serve as our **formal agreement** for your agency." (Pl.'s Mem. Law Supp. Cross-Mot. Summ. J. Ex. B, at 2, ECF No. 65-4) (emphasis added). Defendants also refer to the GPRC as an agreement in their brief. (*See* Defs.' Br. Opp. Pl.'s Mot. Summ. J. 3, ECF No. 68 ("[T]he Confirmation upon which Defendants base their claim for insurance coverage is an agreement . . . .")) Therefore, the Court finds that the GPRC is not a written permit within the meaning of the Policy's Blanket Additional Insureds clause.[2]

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Cross-Motion for Summary Judgment is GRANTED and Defendants' Motion for Summary Judgment is DENIED. An appropriate order follows.

---

[2] Plaintiff argues that even if Defendants were considered additional insureds under the automatic additional insured provision, that provision "limits the additional insured coverage it provides to liability for bodily injury 'caused, in whole or in part,' by one of only three specific things: (1) Keystone's 'ongoing operations performed for' the additional insured; (2) Keystone's 'products'; and (3) Keystone's 'maintenance, operation, or use of equipment' that was 'rented or leased' to Keystone by the additional insured." (Pl.'s Mem. Law Supp. Cross-Mot. Summ. J. 20, ECF No. 65-2.) Plaintiff argues that the automatic additional insured provision does not cover the type of injury involved in the Hallum litigation. However, the Court need not determine whether the type of injury in the Hallum litigation is covered by the automatic additional insured provision because the Court finds that the provision is not applicable to Defendants.